

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-21-00033-CV

———————————————

R. KEVIN RUSSELL, Appellant

V.

JASON DIAL AND CRESTLINE Partners, LLC, Appellees

———————————————

On Appeal from the 141st District Court
Tarrant County, Texas
Trial Court No. 141-320626-20

———————————————

Before Sudderth, C.J.; Womack and Wallach, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

This appeal turns not on the merits of the parties' claims but on the procedural and evidentiary requirements that fell by the wayside when Appellees Jason Dial and Crestline Partners, LLC (together, the Dial Parties) obtained a judgment on those claims.

The merits of the dispute stem from a settlement agreement. That settlement required Appellant R. Kevin Russell to make payments to the Dial Parties, and it authorized the Dial Parties to file suit and seek entry of an agreed judgment (the Settlement Judgment) if Russell defaulted. The Dial Parties later sued, asserting that such a default had occurred. But Russell denied having defaulted, accused the Dial Parties of having breached the settlement by suing, and withdrew his consent to the Settlement Judgment. Nonetheless, the Dial Parties urged the trial court—via a one-page letter with no accompanying evidence—to enforce the parties' settlement by entering the Settlement Judgment's substance with or without Russell's consent. The trial court acted on the letter by entering a modified-but-substantially-similar version of the Settlement Judgment (the Modified Judgment).

Russell appeals, arguing that (1) the Modified Judgment fails to dispose of his pending counterclaim and affirmative defenses and (2) there is no legal basis for entry of the Modified Judgment. Russell's first argument fails, but that failure confirms our

jurisdiction to address his second argument, which is well taken.[1]  We will reverse and remand.

## I.  Background

The parties' settlement established a schedule for Russell to pay $1.7 million over time to satisfy the Dial Parties' claims against him.[2]  Under the settlement, the Dial Parties would not sue Russell absent a default, but if Russell defaulted, then the Dial Parties could sue for fraud and seek entry of the Settlement Judgment.  The agreed-upon Settlement Judgment included a finding that Russell had "perpetuated a fraud upon [the Dial Parties]," and on that basis, awarded the Dial Parties $3.5 million in damages.

The Dial Parties later claimed that Russell had defaulted on the settlement's payment terms, so in October 2020, they filed a fraud suit—which they amended to add other claims, including a claim for breach of the settlement—and sought entry of the Settlement Judgment.  The trial court initially signed the Settlement Judgment, but the court later granted Russell's motion for new trial and set it aside.

Russell denied having defaulted, pointing to another document that he asserted had extended the settlement's payment deadline through December 2020; withdrew

---

[1]Russell's arguments have been reordered for organizational purposes.

[2]The settlement also involved Toledo Gas Gathering, LLC, but that entity is no longer a party to this appeal.  *See Russell v. Dial*, No. 02-21-00033-CV, 2024 WL 4157765, at *1 (Tex. App.—Fort Worth Sept. 12, 2024, order) (per curiam) (mem. op.).

his consent to the Settlement Judgment; and counterclaimed for breach of the settlement, arguing that the Dial Parties had breached by filing suit before the amended payment deadline. Because the trial court found that the parties had indeed amended the terms of the settlement to extend the payment deadline, it advised the Dial Parties to re-urge the Settlement Judgment at the end of December 2020 if Russell defaulted under the amended deadline.

After that deadline passed, the Dial Parties filed a one-page letter asserting that Russell "ha[d] not made any further payments" and urging the trial court to enter the substance of the Settlement Judgment. Russell responded with a letter of his own, emphasizing that he no longer consented to the Settlement Judgment. But the Dial Parties replied with yet another letter, arguing that whether Russell had withdrawn his consent or not, the trial court should enter the Settlement Judgment's substance to enforce the parties' agreement.[3] These letters were not accompanied by any evidence—not even a copy of the settlement agreement.

---

[3]The Dial Parties' reply letter noted that they had filed two prior motions seeking entry of the Settlement Judgment, both of which "centered around the issue of whether the Settlement Agreement had been breached." Unlike the Dial Parties' one-page letter, the previously filed motions were accompanied by evidence. But those motions were filed in October 2020, before the settlement's extended payment deadline passed, and the motions had been denied. The letters at issue in this appeal—the Dial Parties' one-page letter and reply letter—came after the extended payment deadline passed and relied on Russell's failure to "ma[k]e a single payment" since the trial court's earlier rulings.

4

Nonetheless, the Dial Parties submitted a draft of their proposed outcome (the Modified Judgment), which largely tracked the Settlement Judgment but deleted references to the parties' "agree[ment]" and made other changes not relevant to this appeal.[4] The trial court signed this Modified Judgment.

## II. Jurisdiction

Russell asserts that the Modified Judgment fails to dispose of his counterclaim and affirmative defenses. And while Russell does not actually brief this complaint—simply listing it among his appellate arguments without further analysis—the Modified Judgment's alleged failure to dispose of all pending claims threatens our jurisdiction, so we review the matter sua sponte. *See M.O. Dental Lab v. Rape*, 139 S.W.3d 671, 673 (Tex. 2004).

Generally, absent statutory authorization for an immediate interlocutory appeal, our appellate jurisdiction is limited to the review of final judgments. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 195 (Tex. 2001). For a judgment to qualify as final, it must either (1) "clearly and unequivocally state[] that it finally disposes of all claims and parties" or (2) "actually dispose[] of every pending claim and party." *Patel v. Nations Renovations, LLC*, 661 S.W.3d 151, 154 (Tex. 2023) (clarifying that, if the judgment meets the first condition, "the assessment is resolved in favor of finding

---

[4]The Modified Judgment changed the Settlement Judgment by (1) deleting the parties' signatures and references to the judgment being "agreed," (2) reducing the amount that Russell owed to account for his payments, and (3) removing an award of attorney's fees.

finality, and the reviewing court cannot review the record" to determine the second condition); *see Lehmann*, 39 S.W.3d at 205.

The language of the Modified Judgment clearly and unequivocally establishes its finality. It provides that "[t]his judgment is final, disposes of all parties and all claims[,] and is appealable." The Texas Supreme Court has held that these three statements "together form a clear indication of finality." *Patel*, 661 S.W.3d at 154–55. And nothing in the Modified Judgment calls this trinity of finality into question. *See In re Lakeside Resort JV, LLC*, 689 S.W.3d 916, 924 (Tex. 2024) (orig. proceeding) (noting that, though default judgment contained indicia of finality, "[t]o be unequivocal, there must be *no* language pointing against finality").

Against this backdrop, the Modified Judgment's Mother Hubbard clause— which states that "[a]ll relief not expressly granted herein is DENIED"—amounts to a rejection of all unmentioned claims, including Russell's counterclaim and affirmative defenses.[5] *Cf. In re R.R.K.*, 590 S.W.3d 535, 541 (Tex. 2019) (recognizing Mother Hubbard as indication of finality but cautioning that it is "not conclusive . . . when other aspects of the order render the meaning of the clause uncertain").

Contrary to Russell's contention, then, the Modified Judgment finally disposes of all claims and parties. We therefore have jurisdiction to review Russell's primary appellate issue: his argument that the Modified Judgment lacks a legal basis.

---

[5]The Mother Hubbard clause also amounts to a rejection of the Dial Parties' claims against several other defendants who are not parties to this appeal.

### III.  Legal Basis for Modified Judgment

Russell contends that the Modified Judgment lacks a legal basis because (1) it was not agreed to; and (2) it was not the result of summary judgment pleadings, procedure, or evidence.  We agree.

It is undisputed that the Modified Judgment is not an agreed judgment.  It does not purport to have been agreed to by the parties, and although the Modified Judgment's substance is similar to that of the Settlement Judgment, the Dial Parties have repeatedly acknowledged that Russell withdrew his consent before the Modified Judgment was entered.[6]  This acknowledgement is critical because "a [trial] court cannot render a valid agreed judgment absent consent at the time it is rendered." *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995).

The question is thus whether the Modified Judgment can be affirmed as an order granting summary judgment.  *See* Tex. R. Civ. P. 166a.  The Dial Parties claim that it can, pointing to *Padilla*.[7]  *See generally Padilla*, 907 S.W.2d at 459–62.

*Padilla* recognized that, even if one party to a settlement withdraws his consent to the settlement's agreed judgment, that "does not preclude the [trial] court, after

---

[6]The Dial Parties emphasize—as they did before the trial court—that Russell "did not withdraw consent before the [Pre-]Agreed Judgment was filed in October [2020]."  They do not explain why they consider this fact legally significant, though.

[7]The Dial Parties made a similar argument in the trial court, citing *Padilla* and urging the court to enter the Modified Judgment "based on breach of the settlement agreement."  [Capitalization altered.]

proper notice and hearing, from enforcing [the] settlement agreement" by entering a judgment that aligns with the settlement's terms.[8] *Id.* at 461–62. Such a judgment "is not an agreed judgment, but rather is a judgment enforcing a binding contract." *Id.* According to the Dial Parties, that is what the Modified Judgment is: a summary judgment enforcing the parties' settlement agreement.

But this conception of the Modified Judgment has numerous flaws. To name a few, it disregards the Dial Parties' failure to file a summary judgment motion, it overlooks the need for 21 days' notice of submission,[9] and it ignores the Modified Judgment's finding of fraud rather than breach.[10] *See* Tex. R. Civ. P. 166a(c). No flaw is more problematic, though, than the utter lack of supportive evidence.

---

[8]*Padilla* turned on whether an enforceable settlement existed rather than on the procedures used for enforcement. *See* 907 S.W.2d at 456–57, 462. There, the defendant (Padilla) argued that the parties' communications constituted a binding Rule 11 settlement, while the plaintiffs (the LaFrances) argued that the communications did not satisfy Rule 11 and that even if they did, they were not enforceable because the LaFrances had withdrawn their consent before the communications were filed with the trial court. *Id.* at 457–58. Padilla counterclaimed to enforce the settlement, and after both parties moved for summary judgment on the claim, the trial court found that no enforceable settlement existed. *Id.* The Texas Supreme Court reversed, holding that the communications satisfied Rule 11 and that the LaFrances' withdrawal of consent did not change the settlement's enforceability. *Id.* at 460–61. The court then went on to discuss the issue relevant here, holding that, despite the LaFrances' withdrawal of consent prior to entry of judgment on the settlement, the agreement could be enforced via summary judgment. *Id.* at 461–62.

[9]The trial court issued the Modified Judgment less than 10 days after the Dial Parties filled their one-page letter. *See* Tex. R. Civ. P. 166a(c).

[10]The Modified Judgment makes no mention of a settlement but instead finds that Russell "perpetuated a fraud upon [the Dial Parties]" and awards damages on that

As the Texas Supreme Court noted in *Padilla*, "[a]n action to enforce a settlement agreement, where consent is withdrawn, must be based on proper pleading and proof." 907 S.W.2d at 462; *see Quanaim v. Frasco Rest. & Catering*, No. 01-03-01156-CV, 2005 WL 856911, at *3 (Tex. App.—Houston [1st Dist.] Apr. 14, 2005, no pet.) (mem. op.) ("A party seeking enforcement of [a] settlement agreement must pursue a breach-of-contract claim, which is subject to normal rules of pleading and proof."). So for the Dial Parties to secure a summary judgment on their claim for breach of the settlement, they were required to move for traditional summary judgment and conclusively establish their claim's elements: that (1) a settlement contract existed between the parties, (2) Russell breached a material duty under the contract, and (3) the Dial Parties sustained damages as a result. *See* Tex. R. Civ. P. 166a(a), (c); *Bayway Servs.*, 106 S.W.3d at 160 (reciting elements in similar case); *see also Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014) ("As the party moving for traditional summary judgment, [the movant] had the burden to submit sufficient evidence that established on its face that 'there is no genuine issue as to any material fact' and that it is 'entitled to judgment as a matter of

basis. The Dial Parties do not attempt to argue that the Modified Judgment can be affirmed as a summary judgment on their fraud claim; indeed, they do not mention their fraud claim at all. *Cf. Bayway Servs., Inc. v. Ameri-Build Const., L.C.*, 106 S.W.3d 156, 159–60 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that, when appellant withdrew consent to settlement before entry of agreed fraud judgment, trial court's entry of fraud judgment based on settlement supported inference that trial court found breach of settlement).

law."'" (quoting Tex. R. Civ. P. 166a(c)). Conclusively establishing these elements required evidence, and the Dial Parties did not offer any.

Even if we could construe the Dial Parties' one-page letter as a traditional summary judgment motion, that letter had no exhibits, attachments, or cross-references to pre-filed evidence.[11] *See Bayway Servs.*, 106 S.W.3d at 160–61 (holding that trial court erred by entering judgment on settlement when appellee filed motion to sign judgment but "there [wa]s no indication in the record that the trial court heard any evidence" on the alleged settlement breach); *Cadle Co. v. Castle*, 913 S.W.2d 627, 632–34 (Tex. App.—Dallas 1995, writ denied) (holding that motion to enforce settlement—accompanied by the unauthenticated settlement agreement and no other evidence—provided legally insufficient basis for judgment and noting that "[t]he party seeking enforcement of a written settlement agreement as a contract must support it by proof"); *cf. Padilla*, 907 S.W.2d at 462 (noting that both parties had moved for

---

[11]A party's summary judgment motion may rely on evidence already on file with the trial court, but to do so, the motion must "expressly and specifically identif[y] the supporting evidence on file." *Patel v. City of Everman*, No. 2-07-303-CV, 2009 WL 885916, at *5 (Tex. App.—Fort Worth Apr. 2, 2009) (mem. op.), *aff'd*, 361 S.W.3d 600 (Tex. 2012). The Dial Parties' letter did not expressly identify any evidence on file, nor do they claim to have done so.

And although the Dial Parties state that "[t]he issue of breach of the Settlement Agreement was . . . argued at three separate hearings," those hearings were non-evidentiary, and "[n]o oral testimony shall be received at the [summary judgment] hearing" anyway. Tex. R. Civ. P. 166a(c); *see Blackstock Fed. Constructors, LLC v. Ultimate Grp., LLP*, No. 06-17-00096-CV, 2018 WL 891249, at *3 n.4 (Tex. App.—Texarkana Feb. 15, 2018, no pet.) (mem. op.) (recognizing that "the unsworn statements of counsel made during a summary judgment hearing are not evidence").

summary judgment on claim to enforce settlement). The letter's bare assertions that Russell "ha[d] not made any further payments" in violation of the settlement and that the Dial Parties were entitled to entry of the Modified Judgment were no evidence of those facts.[12] *See Hous. Livestock Show & Rodeo, Inc. v. Dolcefino Commc'ns, LLC*, No. 01-22-00491-CV, 2024 WL 3608190, at \*14 (Tex. App.—Houston [1st Dist.] July 31, 2024, no pet.) (noting that arguments asserted in summary judgment response, "without more, are not proper summary judgment evidence"); *Feazell v. Mesa Airlines, Inc.*, 917 S.W.2d 895, 898 (Tex. App.—Fort Worth 1996) ("A motion for summary judgment is not summary judgment evidence."), *writ denied*, 938 S.W.2d 31 (Tex. 1997). Because the trial court entered the Modified Judgment based on these bare assertions and without any supportive evidence, we cannot affirm the ruling as an order granting traditional summary judgment. *See* Tex. R. Civ. P. 166a(c).

The Modified Judgment therefore lacks a legal basis, and we sustain Russell's appellate issue challenging it.

---

[12]While the Dial Parties contend that the terms of the settlement were undisputed, they do not assert that Russell's alleged default was undisputed. Indeed, in Russell's response to the Dial Parties' one-page letter, Russell reminded the trial court that there were disputed fact issues, including "the amounts of any credits and offsets" and Russell's contention that, when the Dial Parties filed suit, "no event of default [by him] . . . ever occurred."

## IV. Conclusion

We reverse the Modified Judgment and remand the case for further proceedings consistent with this opinion. *See* Tex. R. App. P. 43.2(d); *Bayway Servs.*, 106 S.W.3d at 160–61.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Delivered:  January 2, 2025